UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEBRA O. CRASE, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | No. 1:15-cv-00810-JMS-DML |
| | ) | |
| CAROLYN W. COLVIN, *Acting* | ) | |
| *Commissioner of the Social Security* | ) | |
| *Administration,* | ) | |
| | ) | |
| *Defendant.* | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Debra O. Crase applied for disability and disability insurance benefits from the Social Security Administration ("SSA") on October 2011, alleging an onset date of August 13, 2011. [Filing No. 12-2 at 14; Filing No. 12-5 at 2.] Her applications were denied initially on December 5, 2011, [Filing No. 12-4 at 2], and upon reconsideration on February 21, 2012, [Filing No. 12-4 at 14]. Administrative Law Judge T. Patrick Hannon ("ALJ") held an initial hearing on March 8, 2013, [Filing No. 12-2 at 34], and a supplemental hearing on November 8, 2013, whereupon he issued a decision on December 9, 2013, concluding that Ms. Crase was not entitled to receive benefits, [Filing No. 12-2 at 13-26]. The Appeals Council denied review on March 17, 2015. [Filing No. 12-2 at 2-7.] Ms. Crase then filed this civil action, asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). [Filing No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [her] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original).  "If a claimant satisfies steps one, two, and three, [she] will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then [she] must satisfy step four.  Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy."  *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe."  *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).  In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling."  *Id.*  The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 416.920(e), (g).  The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner.  *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.  *Barnett*, 381 F.3d at 668.  When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).  An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion."  *Id.* (citation omitted).

## II.
### BACKGROUND

Ms. Crase was born on October 15, 1966, [Filing No. 12-6 at 2], and has a GED, [Filing No. 12-6 at 6], with previous work experience as a general clerk, insurance registrar, medical clerk,

and member services clerk, [Filing No. 12-6 at 6-7].[1]  Using the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4), the ALJ ultimately concluded that Ms. Crase is not disabled.  [Filing No. 12-2 at 26.]  The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Crase meets the insured status requirements of the Social Security Act and has not engaged in substantial gainful activity since August 13, 2011, her alleged onset date.  [Filing No. 12-2 at 16.]

- At Step Two of the analysis, the ALJ found that Ms. Crase has the severe impairment of fibromyalgia.  [Filing No. 12-2 at 16.]

- At Step Three of the analysis, the ALJ found that Ms. Crase did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [Filing No. 12-2 at 18.]

- The ALJ concluded that through the date of last insured, Ms. Crase had the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she must be allowed to stand and stretch when needed, at least twice an hour for half minute each time."  [Filing No. 12-2 at 18.]

- At Step Four of the analysis, the ALJ concluded that Ms. Crase is capable of performing her past relevant work as an insurance registrar and medical clerk.  [Filing No. 12-2 at 25.]

- The ALJ did not reach Step Five of the analysis.

---

[1] Ms. Crase detailed pertinent facts in her opening brief, and the Commissioner did not dispute those facts.  Because those facts implicate sensitive and otherwise confidential medical information concerning Ms. Crase, the Court will simply incorporate those facts by reference herein.  Specific facts will be articulated as needed.

- Based on these findings, the ALJ concluded that Ms. Crase is not disabled as defined by the Social Security Act and, thus, is not entitled to the requested disability benefits.  [Filing No. 12-2 at 26.]

Ms. Crase requested that the Appeals Council review the ALJ's decision, but that request was denied on March 17, 2015, [Filing No. 12-2 at 2-7], making the ALJ's decision the Commissioner's "final decision" subject to judicial review.  Ms. Crase filed this civil action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), asking this Court to review her denial of benefits.  [Filing No. 1.]

## III.
### DISCUSSION

Ms. Crase raises several issues on appeal.  Because the Court finds that a remand is necessary, it will not address every issue Ms. Crase raises, but instead focuses on the following four issues: first, Ms. Crase claims that the ALJ's credibility analysis is flawed, [Filing No. 16 at 22-31]; second, she argues that the ALJ's reasoning for discounting her husband's statements are legally incorrect, [Filing No. 16 at 31], third, she argues that the ALJ did not properly evaluate her treating rheumatologist's opinion, [Filing No. 16 at 32]; and fourth, Ms. Crase argues that the ALJ did not properly evaluate the physician's Mental RFC Assessment, [Filing No. 16 at 37].  The Court will address the issues in turn.

### A.  ALJ's Credibility Determination

Ms. Crase challenges several parts of the ALJ's credibility determination, including that: 1) the ALJ failed to address all of Ms. Crase's activities of daily living, [Filing No. 16 at 23]; 2) the ALJ erred when he determined that a lack of a clear diagnosis of fibromyalgia affected her credibility, [Filing No. 16 at 24]; 3) the ALJ erred in determining that there is no "clear objective findings of abnormality" with respect to Ms. Crase's credibility, [Filing No. 16 at 27]; and 4) the

ALJ's finding that Ms. Crase is less than fully credible because of her history with Meloxicam is flawed, [Filing No. 16 at 27].

The ALJ's credibility determination is entitled to deference unless it is patently wrong. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). The Court's role is to ensure that the ALJ's determination is reasoned and supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). "An ALJ may not reject a claimant's testimony about limitations on [her] daily activities solely because [her] testimony is unsupported by the medical evidence." *Filus v. Astrue*, 694 F.3d 863, 869 (7th Cir. 2012).

### 1. *Activities of Daily Living*

Ms. Crase claims that the ALJ failed to discuss the full picture of her activities of daily living. [Filing No. 16 at 23.] She argues that the ALJ's only statements in that respect are that Ms. Crase "is able to take care of pets and do light household chores" and that she "continues to drive and is able to independently go to the doctor appointments and grocery stores." [Filing No. 16 at 23 (citing Filing No. 12-2 at 17).] Ms. Crase claims that the ALJ's "sound-bite" approach focused on certain activities without considering her limitations, such as requiring assistance from her husband in caring for her pets, difficulty with housework, cooking, and shopping, and her inability to sit at her home computer for more than fifteen minutes. [Filing No. 16 at 23 (citing Filing No. 12-6 at 22-25; Filing No. 12-6 at 29).] Ms. Crase further claims that the ALJ did not consider statements that she made to her rheumatologist, Paul Borgmeier, M.D., or to her consultative psychologist, Bettye Pate, Psy.D., about her difficulty in handling a wide range of household activities. [Filing No. 16 at 23 (citing Filing No. 12-10 at 64; Filing No. 12-12 at 18; Filing No. 12-12 at 64-65).]

In response, the Commissioner argues that the ALJ found Ms. Crase's daily activities inconsistent with her allegations of disabling limitations. [Filing No. 12 at 4.] The Commissioner claims that the ALJ stated that Ms. Crase is able to take care of her pets, do light chores, drive, and attend doctor appointments independently. [Filing No. 23 at 4 (citing Filing No. 12-2 at 17; Filing No. 12-6 at 22-30).] The Commissioner argues that the ALJ also considered other evidence, such as Ms. Crase's ability to deal with her bankruptcy and foreclosure proceedings, her ability to independently handle a Medicaid appeal, and her work with the department of children's services to obtain custody of her young grandchildren. [Filing No. 12 at 19-20 (citing Filing No. 12-2 at 17).] The Commissioner further claims that the ALJ did not mischaracterize Ms. Crase's daily activities, and that he properly summarized her ability to work part-time and to take care of her two grandchildren. [Filing No. 23 at 5 (citing Filing No. 12-2 at 17).]

In reply, Ms. Crase argues that the problem with the ALJ's assessment is that he did not mention her limitations. [Filing No. 26 at 4.] Ms. Crase states that the Commissioner does not dispute that the ALJ must examine both evidence that favors and disfavors the claimant. [Filing No. 26 at 4.] She further argues that the ALJ did not discuss the limitations that she raised in her brief, and that the Commissioner has not shown that the ALJ could properly disregard those limitations. [Filing No. 26 at 4.]

The Court finds that the ALJ erred when he failed to discuss Ms. Crase's limitations regarding her activities of daily living. In his decision, the ALJ stated that Ms. Crase was able to take care of her pets, do light household chores, and drive independently to her doctor appointments and grocery stores. [Filing No. 12-2 at 17.] The record, however, contains other information that the ALJ did not address. For example, in response to a question in her Function Report, Ms. Crase stated that she feeds, waters, cleans, and plays with her pets, and for the

following question, she indicated that her husband assists her with those tasks when he can.  [Filing No. 12-6 at 23.]  She stated that she has "a real hard time" with household work and cooking, and that she normally fixes canned foods, salads, and other frozen foods.  [Filing No. 12-6 at 23-24.]  These limitations as well as others found in her Function Report are relevant to provide a full picture of Ms. Crase's capabilities.  "An ALJ cannot rely only on the evidence that supports [his] opinion."  Bates, 736 F.3d at 1099; Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994).  "[W]hile an ALJ need not mention every piece of evidence in [his] opinion, [he] cannot ignore . . . evidence that suggests a disability."  Bates, 736 F.3d at 1099; Jones v. Astrue, 623 F.3d 1155, 1162 (7th Cir. 2010).

Moreover, the Court notes that activities of daily living are one of several factors to consider in a credibility analysis, and Ms. Crase's ability to perform some activities does not equate to not being disabled.  See Punzio v. Astrue, 630 F.3d 704, 712 (7th Cir. 2011) (explaining that a plaintiff's ability to complete activities of daily living does not mean that he can manage the requirements of the workplace); Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001)  (asserting that activities of daily living do not necessarily undermine or contradict a claim of disabling pain).  Thus, on remand, the ALJ must adequately address all of Ms. Crase's activities of daily living.

## 2. Diagnosis of Fibromyalgia

Ms. Crase argues that the ALJ erred in his decision when he found that the record lacked a clear diagnosis of fibromyalgia.  [Filing No. 16 at 24 (citing Filing No. 12-2 at 24).]  Ms. Crase argues that Dr. Borgmeier determined she had possible fibromyalgia during her initial consultation and probable fibromyalgia during her second consultation.  [Filing No. 16 at 24 (citing Filing No. 12-10 at 66).]  She claims that thereafter, three physicians from the Disability Determination Bureau ("DDB") diagnosed her with fibromyalgia.  [Filing No. 16 at 24-25 (citing Filing No. 12-13 at 11; Filing No. 12-13 at 69; Filing No. 12-14 at 30).]  After those consultations, Ms. Crase

8

claims that Dr. Borgmeier examined her again and determined that Ms. Crase had "a history of severe fibromyalgia" and that she met the criteria established by the American College of Rheumatology for a diagnosis of fibromyalgia.  [Filing No. 16 at 25 (citing Filing No. 12-13 at 63-64; Filing No. 12-14 at 16).]  Ms. Crase notes that thereafter, Tracy Brenner, M.D., examined Ms. Crase and found that she had "severe fibromyalgia" and that it was "significant."  [Filing No. 16 at 25 (citing Filing No. 12-16 at 15).]  She claims that given her medical history, a "clear diagnosis of fibromyalgia was not lacking" and Dr. Borgmeier's diagnosis of fibromyalgia went from "unsure" to "more certain."  [Filing No. 16 at 26-27.]

In response, the Commissioner argues that there is no evidence that Dr. Borgmeier's fibromyalgia diagnosis met the criteria under Social Security Ruling ("SSR") 12-2p or that it became more certain over time.[2]  [Filing No. 23 at 7.]  The Commissioner further contends that there is no explanation for Dr. Borgmeier's change in his description of Ms. Crase's condition, being that initially he found that Ms. Crase had possible/probable fibromyalgia and after "a gap in treatment," he determined that Ms. Crase had a "history of severe fibromyalgia."  [Filing No. 23 at 7.]

In reply, Ms. Crase points out that both parties agree that the ALJ found that the lack of a clear diagnosis for fibromyalgia lowered the claimant's credibility with respect to the severity of her symptoms.  [Filing No. 26 at 5.]  She claims that the Commissioner does not dispute that the ALJ's statement incorrectly assumes a lack of a clear diagnosis of fibromyalgia nor that seven different physicians diagnosed Ms. Crase with fibromyalgia.  [Filing No. 26 at 5.]  Ms. Crase

_____

[2] The Commissioner claims that SSR 12-2p provides that "a mere statement by a physician that a claimant has fibromyalgia will not satisfy criteria and the evidence must document that the physician reviewed the medical history and conducted a physical examination."  [Filing No. 23 at 6-7.]

further contends that the Commissioner's argument that none of the diagnoses of fibromyalgia satisfy SSR 12-2p does not address the ALJ's error, is "an impermissible post hoc rationale," and fails because the ALJ determined that Ms. Crase's fibromyalgia is a severe impairment.  [Filing No. 26 at 5.]  Lastly, she argues that Dr. Borgmeier's diagnosis became firmer over time – from "possible fibromyalgia" to "probable fibromyalgia" to an actual diagnosis of "fibromyalgia." [Filing No. 26 at 6.]

The Court finds that the ALJ's credibility analysis regarding Ms. Crase's diagnosis of fibromyalgia is flawed.  In his decision, the ALJ stated in relevant part: "the lack of clear diagnosis, as well as Dr. Borgmeier's various inconsistencies regarding [Ms. Crase's] condition, lowers [her] credibility with respect to the severity of her symptoms."  [Filing No. 12-2 at 24.]  This statement is confusing and inconsistent with the record.  First, under Step Two of the analysis, the ALJ determined that based on the entire record, Ms. Crase has a severe impairment of fibromyalgia. [Filing No. 12-2 at 16.]  Thus, the Court finds it illogical that Ms. Crase has a severe impairment of fibromyalgia if, as the ALJ contends, there is no actual diagnosis of it in the record.

Second, as Ms. Crase points out, the record is replete with physicians' opinions that diagnosed Ms. Crase with fibromyalgia, and particularly from Dr. Borgmeier, who is a rheumatologist.  Fibromyalgia is a disease with principal symptoms of pain all over the body, and it is unknown what causes such symptoms since no laboratory or clinical tests can determine the presence of fibromyalgia; thus a rheumatologist is in the best position to determine such diagnosis. See *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("Fibromyalgia is a rheumatic disease and the relevant specialist is a rheumatologist.").  In his opinion, Dr. Borgmeier initially stated that Ms. Crase had possible/probable fibromyalgia and after further examinations, he determined that she has a diagnosis of fibromyalgia.  [Filing No. 12-10 at 67-68; Filing No. 12-14 at 16.]

Moreover, three DDB physicians who either examined Ms. Crase or reviewed her file also diagnosed her with fibromyalgia. [Filing No. 12-13 at 11 (R. Bond, M.D., finding fibromyalgia as the primary diagnosis); Filing No. 12-13 at 69 (affirming Dr. Bond's assessment); Filing No. 12-14 at 30 (determining that "[t]his is a 46 y/o female with fibromyalgia . . . .").] Dr. Brenner also examined Ms. Crase and diagnosed her with severe fibromyalgia. [Filing No. 12-16 at 15.] Although an ALJ's credibility determination is given special deference, "the ALJ must still 'build an accurate and logical bridge between the evidence and the result.'" *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (internal citation and quotation marks omitted). Here, the ALJ failed to build a logical bridge because the record does not lack a clear diagnosis of fibromyalgia. Accordingly, this issue requires remand.

### 3. Absence of Clear Objective Findings of Abnormality

Ms. Crase argues that the ALJ erred when he made the following assessment: "the records simply do not support the need for any greater limitations than those found within this decision. The medical documents primarily appear to document Ms. Crase's subjective complaints without objective findings of abnormality." [Filing No. 16 at 27 (citing Filing No. 12-2 at 20-21).] She contends that this statement demonstrates that the ALJ has no clear understanding of the nature of fibromyalgia, and that there is no objective way to determine its severity. [Filing No. 16 at 27.]

In response, the Commissioner argues that the ALJ properly considered objective medical evidence in assessing Ms. Crase's credibility regarding her fibromyalgia because such evidence is relevant in assessing the severity and intensity of a claimant's symptoms, even if fibromyalgia is not diagnosed using objective medical evidence. [Filing No. 23 at 8-9.]

In reply, Ms. Crase argues that a "lack of objective medical evidence cannot logically be used to reject credibility . . . when an impairment's symptoms are entirely subjective." [Filing No.

26 at 6.] She further refutes the Commissioner's argument that objective medical evidence can be used to assess the severity and intensity of the claimant's symptoms with fibromyalgia. [Filing No. 26 at 7.] She agrees that while a lack of objective evidence is not the sole reason that the ALJ discredited her testimony, it is still one of the reasons the ALJ improperly found that Ms. Crase lacked credibility. [Filing No. 26 at 8.]

The Court finds that the ALJ erred when he discredited the severity of Ms. Crase's symptoms from fibromyalgia because of a lack of objective evidence. In his decision, the ALJ stated: "[t]he records do not support the need for any greater limitations than those found within this decision. The medical documents primarily appear to document Ms. Crase's subjective complaints without clear objective findings of abnormality." [Filing No. 12-2 at 20-21.] The ALJ's assessment demonstrates a lack of understanding of fibromyalgia. As the Court already noted, fibromyalgia is a "mysterious disease" that causes pain in different parts of the body and the symptoms cannot be verified through objective medical evidence. *See Sarchet,* 78 F.3d at 305. Although an ALJ may inquire into whether medical evidence from the record sufficiently supports a claim for disability as a result of fibromyalgia, *see, e.g., Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998) ("whatever the diagnosis—tarsal tunnel of the ankles and feet, or fibromyalgia throughout the body—[the claimant] must provide sufficient evidence of actual disability"), an ALJ cannot discredit a claimant's symptoms because of the absence of clear objective medical evidence. Thus, this issue requires remand.

4.   *History with Meloxicam*[3]

Ms. Crase argues that the ALJ erred when he found Ms. Crase less than fully credible because she claims that she was unable to take Meloxicam due to an allergic reaction to it when no evidence supports that she had an actual allergy. [Filing No. 16 at 27.]  Ms. Crase argues that she had adverse reactions to Meloxicam as early as 2011 when Dr. Borgmeier first prescribed it to her.  [Filing No. 16 at 27-28.]  She further claims that she stopped taking Meloxicam for a while and started again in 2013 after Dr. Brenner prescribed it again.  [Filing No. 16 at 28.]  She argues that two days after it was prescribed, she went to the emergency room because, as noted by the hospital staff, she had an "adverse reaction to tramadol and meloxicam, shortness of breath." [Filing No. 16 at 28 (citing Filing No. 12-15 at 56).]

The Commissioner in her response argues that the ALJ stated that the records do not support an actual allergy to Meloxicam or any other medication.  [Filing No. 23 at 9 (citing Filing No. 12-2 at 25).]  The Commissioner further contends that although Ms. Crase believed that she had an adverse reaction to the medication, there is no medical opinion that supports this assertion. [Filing No. 23 at 9-10.]

In reply, Ms. Crase argues that the Commissioner's reasoning is flawed.  [Filing No. 26 at 9.]  She asserts that to the extent the Commissioner claims that Ms. Crase had no allergic reaction to Meloxicam, the Commissioner is incorrect because Ms. Crase had to be taken to the emergency room due to an adverse reaction to the medication.  [Filing No. 26 at 9.]  She further argues that if the Commissioner is arguing that the ALJ correctly discredited Ms. Crase because she "claimed

---

[3] Meloxicam is a "nonsteroidal anti-inflammatory drug" that "works by reducing hormones that cause inflammation and pain in the body."   Drugs.com, Meloxicam,  http://www.drugs.com/ meloxicam.html (last visited April 12, 2016)

she had an allergy when what she had was an adverse reaction, the argument is not logical," since the difference between both is "a fine distinction that is lost on most people." [Filing No. 26 at 9.]

The Court finds that the ALJ's assessment is flawed.  In the decision, the ALJ noted that the only medication that Ms. Crase ever benefited from was Meloxicam and that she was unable to take it because she claimed she was allergic to it.  [Filing No. 12-2 at 25.]  He further noted that the record does not support an actual allergy.  [Filing No. 12-2 at 25.]  However, as Ms. Crase points out, the record clearly shows that she experienced adverse reactions to the medication, and that at one point, she had to go to the emergency room due to an adverse reaction as a result of the medication.  [See Filing No. 12-15 at 56.]  Further, as the ALJ acknowledges, Ms. Crase complained to several physicians about her symptoms from the medication.  Accordingly, the ALJ failed to build a "logical bridge" between the record and the credibility determination since the record reflects no inconsistency regarding her inability to take Meloxicam.

### 5.  Credibility Determination Patently Wrong

For all of the foregoing reasons, the Court finds that the ALJ's credibility determination was patently wrong.  On remand, the ALJ should provide a proper analysis of Ms. Crase's credibility determination with respect to Ms. Crase's activities of daily living, diagnosis of fibromyalgia, the severity of her symptoms as a result of fibromyalgia, and her history with Meloxicam.  Although the ALJ's credibility determination alone requires remand, the Court will address some of the other issues that Ms. Crase raises.

### B.  Third Party Statement

Ms. Crase argues that the ALJ's reasons for discounting the third party statement from Ms. Crase's husband are legally incorrect.  [Filing No. 16 at 31.]  She claims that the ALJ erred when he stated that (1) "allegedly limited daily activities cannot be objectively verified with any

reasonable degree of certainty"; and (2) "even if the claimant's daily activities are as truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons."  [Filing No. 16 at 31 (citing Filing No. 12-2 at 25).]

In response, the Commissioner claims that the ALJ gave proper reasons for discounting the statements from Ms. Crase's husband.  [Filing No. 23 at 12.]  She contends that the Seventh Circuit Court of Appeals previously upheld cases that used the same reasoning as the ALJ did here.  [Filing No. 23 at 12.]  The Commissioner argues that this language is harmless since the statements from Ms. Crase's husband essentially mirror Ms. Crase's testimony, and that the Seventh Circuit has held that when "the ALJ provide[s] a rationale supported by the record for declining to fully credit Plaintiff's subjective complaints, it is reasonable [for] the ALJ [to] decline[] to fully credit the third-party function report."  [Filing No. 23 at 12.]

In reply, Ms. Crase reiterates that the ALJ's analysis is flawed and claims that corroborative statements have value.  [Filing No. 26 at 13.]

An ALJ may consider information from non-medical sources, which include spouses.  *See* 20 C.F.R. § 404.1513(d)(4); *see also* SSR 06–3p.  In considering statements from "other sources," "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  SSR 06–3p.

The Court finds the ALJ's reasoning deficient.  In assessing the statements from Ms. Crase's husband, the ALJ states that the "allegedly limited daily activities" that her husband described could not be "objectively verified," and that even if she is as limited as her husband alleges, "it would be difficult to attribute that degree of limitation" to Ms. Crase's medical

condition.  [Filing No. 12-2 at 25.]  Ms. Crase cites to *Schrock v. Colvin*, 2015 WL 364246 (S.D. Ind. 2015), which she claims is a decision from this Court that determined that the ALJ's exact reasoning as the ALJ's reasoning here was legally incorrect per Seventh Circuit precedent.  In *Schrock*, however, this Court found that the ALJ used the same language to discredit the claimant's testimony as opposed to a third party statement.  Regardless, although the circumstances of this case are quite different, the reasoning in *Schrock* is instructive.  As Ms. Crase asserts, the statements from Ms. Crase's husband are corroborated by Ms. Crase's own testimony regarding her limitations,[4] and since an ALJ cannot reject a claimant's testimony about limitations on her daily activities just because it is unsupported by objective medical evidence, *see Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014), the ALJ erred in discrediting her husband's statements. Moreover, the ALJ failed to cite to any other evidence from the record that contradicted the third party statement.  Thus, since her husband's statements regarding Ms. Crase's limitations would undermine the ALJ's RFC determination, this issue requires remand.

### C.  Treating Physician's Opinion

Ms. Crase argues that the ALJ's justification for giving little weight to Dr. Borgmeier's opinion is flawed in several respects.  She claims that the ALJ's assessment understates Dr. Borgmeier's findings.  [Filing No. 16 at 33-34.]  She also contends that there is no evidence to support that "normal ranges of motion contradict a finding that [Ms.] Crase has exertional limitations as a result of her fibromyalgia."  [Filing No. 16 at 34.]  Ms. Crase asserts that the ALJ erred when he found Dr. Borgmeier less credible because he initially diagnosed her with probable

---

[4] The Commissioner points out that because the ALJ discredited Ms. Crase's testimony, it made no error because the husband's statements essentially mirror Ms. Crase's statements.  This argument fails, however, because the Court found that the ALJ erred in his credibility determination.

fibromyalgia and later with severe fibromyalgia.  [Filing No. 16 at 34.]  She further claims that it was error to give less weight to Dr. Borgmeier's opinions because Ms. Crase had problems with her compliance and gaps in treatment.  [Filing No. 16 at 33-34 (citing Filing No. 12-2 at 23).]  She argues that the ALJ's assessment that Ms. Crase was able to sit through the entire hearing despite Dr. Borgemeier's assessment that she could not sit more than a half hour is an improper reason to reject part of Dr. Borgmeier's opinion.  [Filing No. 16 at 33-35.]  Lastly, Ms. Crase points out that the ALJ's analysis of Dr. Borgemeier's opinion does not articulate the factors listed in 20 C.F.R. 404.1527(c). [Filing No. 16 at 35.]

In response, the Commissioner argues that the ALJ reasonably evaluated Dr. Borgmeier's opinion, and that he found no evidence to demonstrate Dr. Borgmeier's fibromyalgia diagnosis met the criteria under SSR 12-2p or that it became more certain over time.  [Filing No. 23 at 7.] In a footnote, the Commissioner argues that the ALJ need not expressly discuss every factor under 20 C.F.R. 404.1527(c), so long as the ALJ gives "good reasons" for rejecting Dr. Borgmeier's opinion.  [Filing No. 23 at 7.]  The Commissioner contends that Dr. Borgmeier does not explain why he initially opined that Ms. Crase had probable fibromyalgia and that after she experienced a gap in treatment, he later found that she had a severe diagnosis of fibromyalgia.  [Filing No. 23 at 7.]  Lastly, the Commissioner asserts that there is no documentation that Dr. Borgmeier or any other physician examined Ms. Crase's trigger points for a formal fibromyalgia diagnosis, and therefore claims that there was no "firm" diagnosis of fibromyalgia.  [Filing No. 23 at 7-8.]

In reply, Ms. Crase argues that the Commissioner does not address the ALJ's errors that she raised in her brief.  [Filing No. 26 at 14.]  She argues that contrary to the Commissioner's argument, when the ALJ does not give a treating physician's opinion controlling weight, the ALJ must consider "the length, nature, and extent of the treating relationship, frequency of examination,

the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." [Filing No. 26 at 14-15.]  She argues that the only factor that the ALJ considered was supportability.  [Filing No. 26 at 15.]

Under 20 C.F.R. § 404.1527(c)(1), an ALJ should "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source  who has not examined [the claimant]" because of his greater familiarity with the claimant's conditions and circumstances. *Minnick v. Colvin*, 775 F.3d 929, 937-38 (7th Cir. 2015).  Section 404.1527(c)(2) provides that "[i]f [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *Minnick*, 775 F.3d at 938.  If the ALJ opts not to give a treating physician's opinion controlling weight, he must apply the factors under 20 C.F.R. § 404.1527(c)(2)-(6).

The Court finds that the ALJ's explanation for giving less weight to Dr. Bergmeier's opinions is flawed.  In his decision, the ALJ concluded that Dr. Borgmeier's assessment of Ms. Crase's limitations was "extreme" and that such findings are outweighed by the medical expert's hearing testimony.  [Filing No. 12-2 at 23.]  The ALJ also challenged Dr. Borgmeier diagnosis of "possible fibromyalgia" during Ms. Crase's first appointment and then "severe fibromyalgia" during her last appointment because his record of Ms. Crase does not show "worsening conditions."  [Filing No. 12-2 at 23.]  Lastly, the ALJ found that Ms. Crase's gaps in treatment affected Dr. Borgmeier's opinion, and that Ms. Crase was able to sit during the entire hearing lasting fifty minutes despite "her sitting limitation."  [Filing No. 12-2 at 23.]  At the outset, the Court indicated earlier that the ALJ improperly found the severity of Ms. Crase's symptoms from

fibromyalgia less than fully credible partly because the record showed no clear objective findings. Given this explanation, it is likely that the ALJ's view of Dr. Borgmeier's opinion was improperly affected by his assessment of the severity of Ms. Crase's symptoms. *See Clifford*, 227 F.3d at 870 ("[I]t appears that the ALJ's view of [the physician's] opinion may have been affected by the ALJ's failure to consider [the claimant's] complaints of disabling pain.").

The Court turns to the standard in evaluating a treating physician's opinion. An ALJ must give the treating physician's opinion controlling weight if it is well-supported by clinical findings and unless it is inconsistent with the record. *See* 20 C.F.R. § 404.1527(c)(2). The Court finds the ALJ's analysis troubling. First, the ALJ has not pointed to any evidence in the record that is inconsistent with Dr. Borgmeier's opinions. Moreover, the ALJ states that it found the medical expert's hearing testimony outweighed Dr. Borgmeier's findings and provides no further explanation of why he came to this conclusion. "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (citations omitted).

Second, and most telling, the ALJ is not in the best position to determine whether a diagnosis of fibromyalgia was proper. Here, the ALJ points out that the rule of thumb for determining a diagnosis of fibromyalgia is to determine if tenderness exists in fixed locations throughout a claimant's body. *See* SSR 12-2p. However, as the Seventh Circuit has held, Dr. Borgmeier is a rheumatologist and is in the best position to determine a proper diagnosis of fibromyalgia. *See Sarchet*, 78 F.3d at 307; *see also* 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty . . . ."). The ALJ has not pointed to any evidence that states that Ms. Crase has no

diagnosis of fibromyalgia.  Accordingly, due to the ALJ's errors in his assessment of Dr. Borgmeier's opinions, this issue requires remand.

### D.  Mental Impairments

Ms. Crase argues that the ALJ erred when he did not evaluate the Mental RFC Assessment from William Wiseman, M.D.  [Filing No. 16 at 38.]  She contends that this omission is material because Dr. Wiseman identifies several mental impairments, which would affect her ability to function in numerous work-related areas.  [Filing No. 16 at 28.]  She claims that the ALJ is required to evaluate every medical opinion and if the ALJ chooses to reject a particular opinion, he must articulate his reasoning.

In response, the Commissioner claims that Ms. Crase's arguments lack merit because the ALJ did evaluate Dr. Wiseman's opinion in his decision.  [Filing No. 23 at 14-15.]  The Commissioner argues that the "ALJ reasonably discounted Dr. Wiseman's opinion in light of [Ms. Crase's] treatment history, her noncompliance with treatment, her ability to care for her two grandchildren and pets, her part-time work from October 2012 to March 2013, as well as her ability to deal with complicated procedures . . . ."  [Filing No. 23 at 15-16 (citing Filing No. 12-2 at 23).]  Moreover, the Commissioner claims that the ALJ is not required to discuss every piece of evidence.  [Filing No. 23 at 15.]

In reply, Ms. Crase argues that the ALJ did evaluate some of Dr. Wiseman's opinions, [*see* Filing No. 12-14 at 11-12], but not the other opinions, [*see* Filing No. 12-14 at 3-4; Filing No. 26 at 16].  She argues that "a medical opinion is not just another piece of evidence" and that "the Commissioner's regulations, and the Commissioner's rulings specifically require ALJs to evaluate all medical opinions."  [Filing No. 26 at 16.]  Ms. Crase argues that the ALJ must either sufficiently

articulate his reasons for rejecting the opinion or include the limitations from that opinion in his RFC assessment.  [Filing No. 26 at 16-17.]

An ALJ must consider all medical opinions in the record.  *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *see* 20 C.F.R. § 404.1527(b), (c); *Knight*, 55 F.3d at 313–14.  "If [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2); *Minnick*, 775 F.3d at 938.  If the ALJ opts not to give a treating physician's opinion controlling weight, he must apply the factors under 20 C.F.R. § 404.1527(c)(2)-(6).

The Court finds that the ALJ did not properly evaluate Dr. Wiseman's Mental RFC Assessment with respect to Ms. Crase's mental impairments.  As the Commissioner contends, the ALJ does *generally* discuss Dr. Wiseman's Mental RFC Assessment and accords it little weight. [*See* Filing No. 12-2 at 23.]  In particular, the ALJ states that Dr. Wiseman's opinion is extreme given "the benign treatment history," and goes on to state that the level of activities that Ms. Crase has been able to perform and her "reported level of compliance" are "inconsistent with [Dr. Wiseman's] reported level of severity."  [Filing No. 12-2 at 23.]

However, the Court finds it difficult to see how the ALJ is able to determine that Ms. Crase cannot possibly be as limited as Dr. Wiseman alleges simply because she is able to perform certain activities.  [*See* Filing No. 12-2 at 23 (finding that "the claimant has been living with her family and helping care of young grandchildren and pets, as well as dealing with complicated procedures such as bankruptcy and foreclosure proceedings, as well as handling Medicaid appeal. . . . [T]he claimant was, in fact, able to work part-time . . . and the records do not show decompensation after

this increase in mental demands.").]  The ALJ is assuming a connection between Ms. Crase's level of activities and her physician's findings with respect to her mental impairments, and is therefore inappropriately "playing doctor."  *Engstrand v. Colvin*, 788 F.3d 655, 660-61 (7th Cir. 2015). Further, the ALJ's assessment does not cite to any medical evidence that would contradict Dr. Wiseman's findings.  In any event, when rejecting an opinion, the ALJ is still required to provide a sound explanation using the factors under 20 C.F.R. § 404.1527(c)(2), which the ALJ failed to do here.  Thus, the Court finds that the ALJ failed to properly evaluate Dr. Wiseman's Mental RFC Assessment.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Ms. Crase's benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four).  Final judgment shall issue accordingly.  On remand, the ALJ must properly consider the following: 1) provide a proper credibility determination; 2) properly evaluate the statements from Ms. Crase's husband; 3) appropriately consider Dr. Borgmeier's opinions in accordance with the Social Security regulations; and 4) appropriately consider Dr. Wiseman's Mental RFC Assessment in accordance with the Social Security regulations.

In addition, on remand the ALJ should also appropriately consider and discuss the following issues raised in Ms. Crase's opening brief: 1) the effect of Ms. Crase's work record on the ALJ's credibility determination; 2) the Indiana Family and Social Services Administration's decision regarding Ms. Crase's disability in accordance to SSR 06-03p; and 3) all of Ms. Crase's Global Assessments of Functioning scores.

Date:  April 13, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Timothy J. Vrana
TIMOTHY J. VRANA LLC
tim@timvrana.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov